**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| NORTHMOBILETECH LLC, | ) |
| | ) |
| Plaintiff, | ) Case No. 11-CV-291 |
| | ) |
| vs. | ) Hon. Barbara B. Crabb |
| | ) |
| GENERAL GROWTH PROPERTIES, INC., | ) JURY TRIAL DEMANDED |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................1

II. FACTUAL BACKGROUND ..............................................................................................1

    A. GGP is a Delaware Corporation Headquartered in Illinois with No Relevant Ties to this District ...................................................................................1

    B. NMT is a Non-Practicing Entity Formed in Wisconsin for the Sole Purpose of Litigating in this District ........................................................................3

III. LEGAL STANDARD ..........................................................................................................4

IV. ARGUMENT .......................................................................................................................5

    A. This Action Could Have Been Brought In The Northern District of Illinois. .....................................................................................................................5

    B. Transfer to the Northern District of Illinois Serves the Convenience of the Parties and Witnesses and Promotes the Interests of Justice. ................................6

        1. The Plaintiff's Choice of Forum ..................................................................6

        2. The Convenience to Parties .........................................................................7

        3. The Convenience to Witnesses ....................................................................9

        4. The Interests of Justice ..............................................................................10

V. CONCLUSION ..................................................................................................................12

## **TABLE OF AUTHORITIES**

**Cases**

*Amtran Tech. Co. v. Funai Elec. Co.*,
  No. 08-CV-740-BBC, 2009 WL 2341555 (W.D. Wis. July 29, 2009).................................. 5, 11

*Carson v. Flexible Foam Products, Inc.*,
  No. 08-CV-095-BBC, 2008 WL 1901727 (W.D. Wis. Apr. 23, 2008) .................................. 8, 9

*Coffey v. Van Dorn Iron Works,*
  796 F.2d 217 (7th Cir. 1986)....................................................................................................... 5

*Encyclopedia Britannica, Inc. v. Magellan Navigation, Inc.*,
  512 F. Supp. 2d 1169 (W.D. Wis. 2007).................................................................................. 13

*Gemini IP Tech., LLC v. Hewlett-Packard Co.*,
  No. 07-C-205-S, 2007 WL 2050983 (W.D. Wis. Jul. 16, 2007) ....................................... passim

*In re Genentech,*
  *Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).................................................................................. 8

*In re Microsoft Corp.*,
  630 F.3d 1361 (Fed. Cir. 2011) ................................................................................................... 7

*In re Zimmer Holdings, Inc.,*
  609 F. 3d 1378 (Fed. Cir. 2010) ..................................................................................... 7, 12, 13

*Kraft Foods Holdings, Inv. v. Proctor & Gamble Co.*,
  No. 07-CV-613-JCS, 2008 WL 4559703 (W.D. Wis. Jan. 24, 2008)....................................... 11

*Matsushita Elec. Indus. Co v. Siliconix Inc.*,
  No. -5-C-732-S, 2006 WL 517628 (W.D. Wis. Mar. 2, 2006) ................................................. 13

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) .................................................................................................................... 6

*Pitney Bowes, Inc. v. Data-Pac Mailing Sys. Corp.*,
  No. 07-CV-470-JCS, 2007 WL 5614076 (W.D. Wis. Dec. 4, 2007).................................. 10, 11

*Pragmatus AV, LLC v. Facebook, Inc.*,
  --- F. Supp. 2d ----, 2011 WL 320952 (E.D. Va. 2011) ........................................................... 14

*Recht v. Metro Goldwyn Mayer Studio, Inc.*,
  No. 08-CV-250-SLC, 2008 WL 4460379 (W. D. Wis. Sept. 29, 2008) ........................... 5, 6, 11

*San Francisco Tech., Inc. v. The Glad Prods. Co.*,
  No. 10-CV-00966, 2010 WL 2943537 (N.D. Cal. Jul. 26, 2010)............................................. 12

*Snyder v. Revlon, Inc.*,
  No. 06-C-394-C, 2007 WL 791865 (W.D. Wis. Mar. 12, 2007) .................................................. 9

*U.S. ex rel. Gervae v. Payne & Donlan, Inc.*,
  No. 01-C-0383-C, 2003 WL 23185881 (W.D. Wis. July 14, 2003) ............................................ 5

*Uniroyal Engineered Prods., LLC v. Omnova Solutions Inc.*,
  No. 08-CV-586-SLC, 2009 WL 736700 (W.D. Wis. Mar. 19, 2009) ........................................ 6

*Zipher Ltd. v. Markem Corp.*,
  No. 06-C-745-5, 2007 WL 840514 (W.D. Wis. Mar. 9, 2004) ....................................... 8, 10, 11

**Statutes**

28 U.S.C. § 1391(c) ............................................................................................................... 7

28 U.S.C. § 1400(b) ............................................................................................................... 7

28 U.S.C. § 1404(a) ............................................................................................................ 6, 7

## I. INTRODUCTION

Neither of the parties to this lawsuit has any relevant connections to the Western District of Wisconsin. This case should therefore be transferred to a more convenient forum, the Northern District of Illinois.

The plaintiff, NorthMobileTech LLC ("NMT") is a non-practicing entity that established its "corporate headquarters" in Wisconsin fourteen days before filing this patent infringement lawsuit, admittedly for the very purpose of litigation. NMT appears to share that "corporate headquarters" with a number of other companies, has no employees in Wisconsin, and does not even appear to have an active Wisconsin telephone number. NMT's two relevant witnesses reside in Toronto, Canada. The defendant, General Growth Properties, Inc. ("GGP") is a shopping center owner and operator headquartered in Chicago, Illinois. GGP's only connection to the District is that one of its one hundred and sixty-nine shopping centers is located here. The vast majority of GGP's relevant witnesses are in the Northern District of Illinois. No relevant third party witnesses are located in the District.

The Western District of Wisconsin has few, if any, ties to this litigation. The Northern District of Illinois is the more convenient forum. In the interest of justice, this Court should not endorse NMT's forum shopping behavior and this case should be transferred to the Northern District of Illinois.

## II. FACTUAL BACKGROUND

### A. GGP is a Delaware Corporation Headquartered in Illinois with No Relevant Ties to this District.

GGP has its corporate headquarters in Chicago, Illinois. (*See* Ex. A, Declaration of Jeffery Cloud ("Cloud Decl.") at ¶ 5). GGP is the second-largest owner and operator of shopping centers in the United States and owns, operates, and manages approximately one

hundred and sixty-nine shopping centers spread across the United States. Only one of those malls is located in this District. (*Id.*). GGP provides property management services to its shopping centers from its corporate headquarters in Chicago, Illinois. (*Id.*).

As part of its marketing strategy, GGP manages a customer affinity program known as "The Club." (*Id.* at ¶ 8). An element of The Club is The Club Mobile App, which is a software application that provides sales and event information to consumers that shop at GGP shopping centers. (*Id.*). NMT accuses GGP's The Club Mobile App of infringing U.S. Patent No. 7,805,130 ("the '130 patent") titled "Marketing Method." (Ex. B, Complaint at ¶¶ 10-11).

The vast majority of GGP's relevant promotional and marketing related witnesses are located at GGP's headquarters in Chicago, Illinois. (*Id.* at ¶¶ 11, 20). The Club Mobile App marketing strategy was developed at GGP's corporate headquarters. (*Id.* at ¶¶ 9). GGP manages the ongoing day-to-day operation of The Club Mobile App at its Chicago headquarters. (*Id.* at ¶¶ 22-24). To the extent a witness with relevant knowledge is located at the one GGP shopping center in this District, a witness with the same knowledge exits at GGP's other shopping centers throughout the United States, including those in and around Chicago. (*Id.* at ¶ 21, 26).

None of GGP's witnesses relevant to the technical design, development, and coding of The Club Mobile App are located in the Western District of Wisconsin. (*Id.* at ¶¶ 15-16). The Club Mobile App was developed by GGP personnel in Chicago in conjunction with Point Inside Inc. and L4 Mobile, LLC, both located in the Seattle, Washington area. (*Id.* at ¶ 13). The technical design and coding took place in GGP's Chicago headquarters and Point Inside's and L4 Mobile's locations in the Seattle area. (*Id.* at ¶ 13).

GGP and related third party witnesses likely to have relevant knowledge regarding The Club Mobile App are located in the following places:

| Witness Name | Subject Matter | Location |
|---|---|---|
| Jeffrey Cloud | Marketing and ongoing operations | Chicago, Illinois |
| Keith Maladra | Marketing and ongoing operations | Chicago, Illinois |
| Eric Washington | Technical design and development | Chicago, Illinois |
| Katie Sholem | Business management and ongoing operations | Chicago, Illinois |
| John Croy | Point Inside Inc. Technical design and development | Bellevue, Washington |
| Ben Kotovic | L4 Mobile, LLC Technical design and development | Seattle, Washington |

(*Id.* at ¶¶ 11, 15, 19, 24).

Similarly, GGP documents likely to be relevant are located in the following places:

| Subject Matter | Location |
|---|---|
| Marketing for The Club Mobile App | Chicago, Illinois |
| Business management and ongoing operations for The Club Mobile App | Chicago, Illinois |
| Technical design and development for The Club Mobile App | Chicago, Illinois; Bellevue, Washington; Seattle, Washington |

(*Id.* at ¶¶ 10, 14, 18, 23).

### B. NMT is a Non-Practicing Entity Formed in Wisconsin for the Sole Purpose of Litigating in this District.

NMT is a non-practicing entity and the alleged owner of the '130 patent. By its own admission, NMT's only connection to the Western District of Wisconsin is litigation motivated. (*See* Ex. C, Declaration of Ian Gregory Smith ("Smith Decl.") at ¶ 4). NMT appears to have no relevant witnesses located anywhere in Wisconsin; indeed, it does not even appear to have a Wisconsin phone number. (Ex. D, NMT Email re '130 Patent Assignment). The named inventors of the '130 patent, Ian Gregory Smith and Paul Edwards, organized NMT as a limited liability company with themselves as its sole members and owners. (Ex. C, Smith Decl. at ¶¶ 2, 4). Mr. Smith and Mr. Edwards reside in Toronto, Canada. (*Id.* at ¶3). The Toronto law firm of

3

Smart & Biggar prosecuted the '130 patent. (Ex. E, PAIR Listing of Attorneys of Record for '130 Patent; Ex. F, '130 Patent File History). NMT also appears to have no employees in the District. Indeed, the only two identifiable people even associated with NMT in the Western District of Wisconsin are its outside registered agent and litigation attorney, Messrs. Gary Lukken[1] and Joel B. Bardsley, respectively. (Ex. I, NMT Wisconsin Corporate Records; Ex. J, NMT Articles of Incorporation; Ex. K, Firm Biography for Joel B. Bardsley; Ex. B, Complaint). Neither appears to have any knowledge relevant to this case.

NMT, by its own admission, was organized in Wisconsin "for the specific purpose of conducting business, *and enforcing NMT's rights*," after Mr. Edwards and Mr. Smith "learned that the federal court in the Western District of Wisconsin was more likely than other courts in the United States to resolve the anticipated patent infringement case expeditiously." (Ex. C, Smith Decl. at ¶ 4). Not surprisingly, NMT was formed in Wisconsin on April 7, 2011 and filed this suit 14 days later on April 21, 2011.[2]

## III. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1404(a), a district court can "transfer any civil action to any other district or division where it might have been brought . . . [f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The Seventh Circuit employs a flexible analysis of the statutory factors, whereby "courts should view these factors as placeholders among a broader set of considerations and evaluate them in light of all the circumstances of the case." *U.S. ex rel. Gervae v. Payne & Donlan, Inc.*, No. 01-C-0383-C, 2003 WL 23185881, at *2 (W.D. Wis. July 14, 2003) (citing *Coffey v. Van Dorn Iron Works,*

---

[1] Mr. Lukken's name is associated with at least thirty-seven businesses registered in Wisconsin, all of which have the same 2413 Parmenter Street address as NMT's. (Ex. G, Westlaw Corporate Database Search Results). At least five of these businesses also apparently share Suite 125 with NMT. (Ex. H, Dun & Bradstreet Search Results).

[2] NMT also sued a different defendant, Simon Property Groups, Inc., in the Western District of Wisconsin on April 20, 2011. (Ex. L, NMT v. Simon Complaint).

4

796 F.2d 217, 219-20 (7th Cir. 1986)).  In this District, courts typically perform this analysis by weighing "(1) the plaintiff's choice of forum; (2) the convenience to parties; (3) the convenience to witnesses; and (4) the interests of justice." *Amtran Tech. Co. v. Funai Elec. Co.*, No. 08-CV-740-BBC, 2009 WL 2341555, at *2 (W.D. Wis. July 29, 2009).  After weighing these factors, a motion to transfer should be granted where the moving party meets its "burden of establishing that the transferee forum is 'clearly more convenient.'" *Recht v. Metro Goldwyn Mayer Studio, Inc.*, No. 08-CV-250-SLC, 2008 WL 4460379, at *2 (W. D. Wis. Sept. 29, 2008) (quoting *Coffy*, 796 F.2d at 219-20).

## IV. ARGUMENT

### A. This Action Could Have Been Brought In The Northern District of Illinois.

As a threshold matter, "[t]ransfer of a case under 28 U.S.C. § 1404(a) is appropriate when (1) venue is proper in the transferor district and (2) the transferee district is one in which the action may have been brought."  *Uniroyal Engineered Prods., LLC v. Omnova Solutions Inc.*, No. 08-CV-586-SLC, 2009 WL 736700, at *3 (W.D. Wis. Mar. 19, 2009) (citing *Coffy*, 796 F.2d at 219).  First, although the Western District of Wisconsin is not a convenient venue, GGP does not deny that it is subject to personal jurisdiction in this District and that therefore venue is proper here.  *See* 28 U.S.C. §§ 1400(b), 1391(c).  Second, given that GGP's corporate headquarters are located in Chicago, Illinois, the Northern District of Illinois is a district in which the case could have been brought.  28 U.S.C. §§ 1400(b), 1391(c); Ex. A, Cloud Decl. at ¶ 5.  Because the threshold determinations for transfer to the Northern District of Illinois are met, the analysis must now focus on "whether the transfer serves the convenience of the parties and witnesses and will promote the interests of justice."  *Uniroyal*, 2009 WL 736700 at *2.  This analysis demonstrates that the Northern District of Illinois is clearly a more convenient venue.  Indeed, no factor weighs in favor of keeping the case in the Western District of Wisconsin.

> **B.      Transfer to the Northern District of Illinois Serves the Convenience of the Parties and Witnesses and Promotes the Interests of Justice.**
>
> **1.      The Plaintiff's Choice of Forum**

Because NMT is a non-practicing entity whose sole reason for organizing in Wisconsin was to establish venue in this District, NMT's choice of venue is entitled to no weight. *Uniroyal*, 2009 WL 736700 at *3 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981) ("In theory, a plaintiff's choice of forum does deserve deference, but only when a plaintiff is litigating in his home forum."). Although NMT contends that its principal place of business is in Middleton, Wisconsin, this location is likely no more than a mail-drop box, and in no way can be considered a home forum. *See supra* Section II.B. Courts in this district and elsewhere have rejected similar attempts to manipulate venue. *See, e.g.*, *Gemini IP Tech., LLC v. Hewlett-Packard Co.*, No. 07-C-205-S, 2007 WL 2050983, at *1 (W.D. Wis. Jul. 16, 2007) (transferring out of plaintiff's chosen forum when "[t]he only apparent connection between plaintiff and Wisconsin is that it was organized here for purposes of establishing venue"); *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (rejecting plaintiff's assertion that it had a principal place of business in the Eastern District of Texas when its offices "staffed no employees, were recent, ephemeral, and a construct for litigation and appeared to exist for no other purpose than to manipulate venue" and finding plaintiff's incorporation in Texas sixteen days before filing suit to be "no more meaningful, and no less in anticipation of litigation, than the other [efforts] we reject"); *In re Zimmer Holdings, Inc.,* 609 F. 3d 1378, 1381 (Fed. Cir. 2010) (giving no weight to plaintiff's choice of forum in "a classic case where the plaintiff is attempting to game the system by artificially seeking to establish venue by sharing office space with another of the trial counsel's clients"). As these cases show, the Western District of Wisconsin cannot be considered

NMT's "home forum" for the purposes of a venue analysis. Thus, NMT's choice of forum is entitled to no weight.

### 2. The Convenience to Parties

The Northern District of Illinois is more convenient for both parties. Facts relevant to the convenience of the parties include the locations of the parties' headquarters and principal places of business. *See, e.g.*, *Zipher Ltd. v. Markem Corp.*, No. 06-C-745-5, 2007 WL 840514, at *4 (W.D. Wis. Mar. 9, 2004); *Carson v. Flexible Foam Products, Inc.*, No. 08-CV-095-BBC, 2008 WL 1901727, at *2 (W.D. Wis. Apr. 23, 2008) (finding that "a nearby trial would be less disruptive of defendant's operations than a trial in Wisconsin because defendant's corporate witnesses would not be away from their work as long"). GGP's corporate headquarters and principal place of business are in Chicago, Illinois. (Ex. A, Cloud Decl. at ¶ 5). The bulk of the relevant GGP witnesses and evidence are located in Chicago, Illinois. (*Id.* at ¶¶ 10-11, 14-15, 18-19, 23-24). *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the alleged infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.") (citation omitted).

GGP's only place of business in the Western District of Wisconsin is the Oakwood Mall. (Ex. A, Cloud Decl. at ¶ 6). No evidence relevant to the technical design and development of The Club Mobile App is located there. (*Id.* at ¶ 16). Little, if any, evidence relevant to the marketing of The Club Mobile App is located in Wisconsin, and to the extent that any such evidence exists, it is duplicative of evidence maintained in Chicago or of evidence that exists at each of GGP's shopping centers nationwide, including GGP's shopping centers in the Chicago area. (*Id.* at ¶¶ 21, 26). *See Snyder v. Revlon, Inc.*, No. 06-C-394-C, 2007 WL 791865, at *9 (W.D. Wis. Mar. 12, 2007) (transfer favored by fact that "the only material event that occurred in

7

Wisconsin was the sale of the allegedly infringing products [and] no party suggests that more products were sold in Wisconsin than elsewhere"); *see also Carson*, 2008 WL 1901727 at *1-2 (giving no weight to defendant's Western District of Wisconsin facility containing allegedly infringing equipment when facility was one out of ten and a facility existed in the transferee district). The Northern District of Illinois is more convenient for GGP.

Although NMT purports to have a principal place of business in Middleton, Wisconsin, a closer examination reveals that the Wisconsin location is nothing more than a registered office for a non-practicing entity. *See supra* Section II.B. This Court has ruled that Wisconsin is not "a convenient forum for the plaintiff in the sense of § 1404(a)" when "[t]he only apparent connection between plaintiff and Wisconsin is that it was organized here for the purposes of establishing venue." *Gemini*, 2007 WL 2050983 at *1. As in *Gemini*, NMT's only connection to Wisconsin is that its principals decided to organize a company in Middleton, Wisconsin only after "having learned that the federal court in the Western District of Wisconsin was more likely than other courts in the United States to resolve the anticipated patent infringement case expeditiously." (Ex. C, Smith Decl. at ¶ 4). NMT appears to have no employees in Wisconsin, nor does it appear to conduct any business out of its Wisconsin "office." *See supra* Section II.B; *see also, e.g.*, *Gemini*, 2007 WL 2050983 at *1; *Zipher*, 2007 WL 840514, at *4 (finding that balance of conveniences favored transfer when "travel to New Hampshire is surely no less convenient than travel to Wisconsin" when "[p]laintiff's relevant principal place of business is in England" and New Hampshire was "clearly more convenient for the defendant"). Thus, the Western District of Wisconsin is not a convenient forum for NMT, and this factor weighs in favor of transfer to the Northern District of Illinois.

8

### 3. The Convenience to Witnesses

The Northern District of Illinois is also a more convenient venue for the relevant witnesses. Courts differentiate between party witnesses and third-party witnesses, assigning greater weight to the convenience of non-party witnesses. *Pitney Bowes, Inc. v. Data-Pac Mailing Sys. Corp.*, No. 07-CV-470-JCS, 2007 WL 5614076, at *3 (W.D. Wis. Dec. 4, 2007). In this case, potential third-party witnesses include certain Point Inside Inc. and L4 Mobile, LLC technical witnesses, located near Seattle, and the patent prosecution attorneys, located in Toronto. (Ex. A, Cloud Decl. ¶15; Ex. F, '130 Patent File History). Travel from Seattle and Toronto to Chicago is more convenient than travel to Madison as there are multiple non-stop daily flights from both places to Chicago and no non-stop flights to Madison. (*See* Ex. M, OAG Listing of Flights from Toronto and Seattle to Chicago and Madison). Thus, the convenience to third-party witnesses weighs in favor of transfer to the Northern District of Illinois.

The convenience for party witnesses similarly favors transfer to the Northern District of Illinois. GGP's relevant marketing and technical witnesses all work at GGP's corporate headquarters in Chicago. (Ex. A, Cloud Decl. at ¶¶ 11, 15, 19, 24). NMT appears to have no employees in Wisconsin with knowledge relevant to this case. Its only two relevant witnesses are located in Toronto, Canada. (Ex. C, Smith Decl. at ¶ 3). As discussed above, it is likely more convenient for NMT's two witnesses to fly non-stop from Toronto to Chicago than it is for them to fly to Madison. Moreover, this Court has found that venues within the United States are equally convenient for foreign party witnesses, making the convenience of the witnesses factor neutral as to the foreign witness. *See, e.g.*, *Recht*, 2008 WL 4460379 at *4; *Zipher*, 2007 WL 840514 at *4. Thus, on balance the convenience to party witnesses also favors the Northern District of Illinois.

### 4. The Interests of Justice

The interests of justice weigh in favor of transferring this case to the Northern District of Illinois.  "The interests of justice analysis involves the consideration of factors relating to the efficient administration of the court system not to the merits of the underlying dispute." *Kraft Foods Holdings, Inv. v. Proctor & Gamble Co.*, No. 07-CV-613-JCS, 2008 WL 4559703, at *3 (W.D. Wis. Jan. 24, 2008) (citations and internal quotations omitted).  Although courts may consider such factors as speed to trial and consolidation of related litigation, the weight assigned to these factors varies based on the facts and circumstances of each particular case. *See, e.g.*, *Amtran,* 2009 WL 2341555 at *5; *Pitney Bowes*, 2007 WL 5614076 at *4.

In this case, the conveniences to be gained by litigating this action in the Northern District of Illinois outweigh any purported judicial economies created by NMT's improper choice to file suit against two defendants in this District. *See, e.g.*, *Zimmer*, 609 F.3d at 1382 (finding that "the fact that [plaintiff] had also filed suit against another defendant in the same forum" could not "negate[] the significance of having trial close to where most of the identified witnesses reside and where the other convenience factors clearly favor"); *see also San Francisco Tech., Inc. v. The Glad Prods. Co.*, No. 10-CV-00966, 2010 WL 2943537, at *9 (N.D. Cal. Jul. 26, 2010) (granting motion of six defendants in a false marking suit to sever and transfer the cases to the defendants' respective home forums, when "[defendants'] respective contacts with California are dwarfed by their contacts with the forums to which they move to transfer").

Here, the facts are strikingly similar to the *Zimmer* case recently decided by the Federal Circuit.  *See Zimmer*, 609 F.3d 1378.  A non-practicing entity plaintiff (NMT) with tenuous connections to the District has sued two different defendants (GGP and Simon) with two different products. *Id.* at 1380; Ex. B, Complaint; Ex. L, NMT v. Simon Complaint.  Both defendants have filed motions to transfer to more convenient forums. *Id.* at 1380, n.1; Ex. N,

10

Simon Motion to Transfer Venue. And as in *Zimmer*, "the overlap between [the plaintiff's] two actions, both of which are in the infancy stages of litigation, is negligible." *Id.* at 1382; Ex. O, Docket for NMT v. GGP; Ex. P, Docket for NMT v. Simon. Indeed, "[b]ecause the cases involve different products with only a single overlapping patent and no defendant is involved in both actions, it is likely that these cases will result in significantly different discovery, evidence, proceedings, and trial." *Zimmer*, 609 F.3d at 1382. Thus, the Court should give little, if any, weight to the pending Simon action.

Similarly, NMT's alleged desire for a speedy trial should be given little, if any, weight, given the fact that NMT is a non-practicing entity and sells no product competing with GGP's The Club Mobile App. *Encyclopedia Britannica, Inc. v. Magellan Navigation, Inc.*, 512 F. Supp. 2d 1169, 1176 (W.D. Wis. 2007) (speed to trial is less important when "plaintiff failed to present any evidence demonstrating that the parties sell competing products"); *Matsushita Elec. Indus. Co v. Siliconix Inc.*, No. -5-C-732-S, 2006 WL 517628 at *5 (W.D. Wis. Mar. 2, 2006) (same); *see also Gemini*, 2007 WL 2050983 at *2 (finding that speed to trial "assumes less weight in the present circumstances," when plaintiff was a non-practicing entity that "[did] not compete against the defendants" but rather pursued a strategy where it "offered to license [its patents] to each of the defendants").

Indeed, giving preference to NMT's decision to organize and file suit in this District based on this District's speedy docket does not promote the interests of justice--it undermines them. *See, e.g.*, *Pragmatus AV, LLC v. Facebook, Inc.*, --- F. Supp. 2d ----, 2011 WL 320952, at *5 (E.D. Va. 2011). In a case where a non-practicing entity similarly organized in the district mere days before filing suit, the court cautioned that "when a plaintiff with no significant ties to the Eastern District of Virginia chooses to litigate in the district primarily because it is known as

11

a 'rocket docket,' the interest of justice is not served. . . . Left unchecked, allowing lawsuits with such a minimal connection to the district to go forward here would result in docket overloads, unfairly slowing the cases for parties with genuine connections to this district." *Id.* (citation and internal quotations omitted). This Court has similarly discouraged forum shopping by transferring cases where "[t]he only apparent connection between plaintiff and Wisconsin is that it was organized here for the purposes of establishing venue." *Gemini*, 2007 WL 2050983 at *1. Here, NMT has admitted to the same forum-shopping behavior condemned by the courts in the *Pragmatus* and *Gemini* cases, and the interests of justice would not be served by condoning this behavior and allowing NMT to litigate in a forum to which it has no legitimate connection. Hence, this factor too weighs in favor of transfer to the Northern District of Illinois.

## V.   CONCLUSION

The relevant factors all weigh in favor of transfer pursuant to 28 U.S.C. § 1404(a). Indeed, both the law and the facts overwhelmingly point to the Northern District of Illinois as the more convenient venue for both the parties and the witnesses. Thus, for the convenience of the parties and the witnesses and in the interests of justice, GGP respectfully requests this Court transfer this action to the Northern District of Illinois.

Dated:  June 30, 2011                                      Respectfully submitted,

                                                             s/ Mark A. Pals, P.C.
                                                             Mark A. Pals, P.C. (IL 6201751)
                                                             Eric D. Hayes, *pro hac vice pending*
                                                             Helena D. Kiepura, *pro hac vice pending*
                                                             KIRKLAND & ELLIS LLP
                                                             300 North LaSalle Street
                                                             Chicago, Illinois  60654
                                                             Telephone: (312) 862-2000
                                                             Facsimile: (312) 862-2200

12

mark.pals@kirkland.com
eric.hayes@kirkland.com
helena.kiepura@kirkland.com
*Attorneys for Defendant General Growth Properties, Inc.*

_____

David A. Casimir
David A. Payne
CASIMIR JONES, S.C.
2275 Deming Way, Ste 310
Middleton, WI 53562
Telephone: (608) 662-1277
Facsimile: (608) 662-1276
dacasimir@casimirjones.com
*Attorneys for Defendant General Growth Properties, Inc.*

13