IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| NORTHMOBILETECH LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 11-CV-291 |
| v. ) | |
| ) | |
| GENERAL GROWTH PROPERTIES, INC., ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

Defendant General Growth Properties, Inc.'s ("GGP") motion to transfer this case to the Northern District of Illinois, GGP's home forum, is premised on two flawed assertions: (1) Plaintiff NorthMobileTech LLC's ("NMT") is essentially, according to GGP, a sham company organized solely to manipulate venue, and its choice of forum should therefore be completely ignored; and (2) the convenience to GGP and its employee witnesses in its home forum outweighs any of NMT's interests in litigating in this forum. But NMT was not organized in the Western District of Wisconsin with the intent of manipulating venue as GGP asserts. Rather, Paul Edwards and Greg Smith, the owners of NMT, chose to incorporate NMT in the United States, and more specifically in this forum, for legitimate business reasons. NMT's choice of forum is thus entitled to deference, and GGP has failed to present a valid reason why that choice should be disturbed. In fact, if GGP's argument were accepted, NMT would always be denied the right to assert the '130 patent in the forum of NMT's choosing against companies like GGP, who have a nation wide presence, as it will always be more convenient for such a defendant to litigate in its home forum. Such an approach cannot be the proper one.

The remaining factors, convenience to potential third party witnesses and the interests of justice, also do not support a decision to transfer. To the contrary, the interests of justice weigh decidedly in favor of keeping this lawsuit in this Court. The majority of the transfer factors thus weigh in favor of remaining in this District, and GGP's motion should be denied.

## I.   Factual Background

NMT is a Wisconsin limited liability company owned by Ian Gregory Smith and Paul Edwards. Declaration of Ian Gregory Smith ("Smith Dec."), attached hereto as Exhibit 1, at ¶ 2. Mr. Smith and Mr. Edwards are Canadian citizens and the inventors of United States Patent No. 7,805,130 ("the '130 patent"). *Id*. at ¶¶ 2-3. The '130 patent issued on September 28, 2010. Doc. No. 1-4. Shortly after the '130 patent issued, Mr. Edwards and Mr. Smith decided to organize a company in the United States to conduct business in this country regarding the '130 patent, including enforcing their rights under the patent and collecting revenue from such enforcement. *Id*. at ¶5. Numerous legitimate business concerns informed this decision. Specifically, Mr. Edwards and Mr. Smith believed it sensible to establish a United States presence when the primary asset of the company was going to be a United States patent, and one of the primary activities of the company would be licensing the patent and collecting revenue from those licenses. *Id*. at ¶ 6.

Mr. Edwards and Mr. Smith also believed that having a United States company conducting business regarding the patent would provide a more favorable vehicle for marketing the '130 patent compared to a Canadian company, as potential business partners would be more willing to deal with a United States entity rather than a foreign entity. *Id*. Lastly, Mr. Edwards and Mr. Smith recognized that there were tax benefits associated with starting and maintaining a business in the United States that would not have been available to them in Canada. *Id*.

Having properly decided to establish their business in the United States, Mr. Edwards and Mr. Smith were faced with a second decision: in which state to organize their business. Mr. Edwards and Mr. Smith chose Wisconsin due, at least in part, to this Court's ability to swiftly and efficiently resolve patent lawsuits. *Id*. at ¶ 9. This was an important aspect of their decision because Mr. Edwards and Mr. Smith were aware of the reality that their company would likely be forced to resort to litigation to enforce '130 patent. *Id*. Having made their decision, Mr. Edwards and Mr. Smith organized NMT in this District on April 7, 2011 and assigned the '130 patent to NMT on April 11, 2011. *Id*. at ¶¶ 7-10. NMT is registered to do business in Wisconsin, has a registered agent in Wisconsin, has established bank accounts in Wisconsin, and has its only place of business in Wisconsin. *Id*. at ¶ 10. NMT has no business activities or connections of any kind to the Northern District of Illinois. Smith Dec. at ¶¶ 11-15.

The Western District of Wisconsin affords NMT with a much faster resolution of this patent infringement lawsuit than the Northern District of Illinois. The median time to trial in this District over the course of the last six reported years is, on average, less than half that of the Northern District of Illinois:[1]

|  | 2009 | 2008 | 2007 | 2006 | 2005 | 2004 |
|---|---|---|---|---|---|---|
| Median Time From Filing to Trial - W.D. Wisconsin | 15.0 | 12.3 | 10.4 | 13.4 | 11.3 | 10.5 |
| Median Time From Filing to Trial - N.D. Illinois | 27.8 | 27.5 | 29.7 | 26.4 | 27.0 | 28.4 |
| Median Time From Filing to Disposition- W.D. Wisconsin | 5.3 | 4.6 | 4.6 | 4.4 | 4.4 | 5.5 |
| Median Time From Filing to Disposition - N.D. Illinois | 6.2 | 6.2 | 6.2 | 6.5 | 6.9 | 5.9 |

---

[1] *See* http://www.uscourts.gov/cgi-bin/cmsd2009.pl (last visited July 20, 2011)

3

In fact, this District ranks second in the country for speed to trial in civil matters. *Id.*

This is not the only lawsuit in which NMT is seeking to enforce its rights under the '130 patent within this District. NMT has also brought suit in this District against Simon Property Group, L.P. ("Simon") due to its infringement of the '130 patent. Case No. 3:11-cv-287. Simon has also filed a motion to transfer that case to the Southern District of Indiana, based on arguments very similar to those made by GGP in its motion. *Id.*, Doc. Nos. 9, 10.

## II.     Legal Standards Under § 1404(a)

Determining whether transfer is appropriate pursuant to 28 U.S.C. § 1404(a) requires an analysis of four factors: (1) the plaintiff's choice of forum, (2) the convenience to parties, (3) the convenience to witnesses, and (4) the interests of justice. *Roberts & Schaefer Co. v. Merit Contracting, Inc.*, 99 F.3d 248, 254 (7th Cir. 1996). A plaintiff's choice of forum "is entitled to great weight and will not be disturbed except upon a clear-cut showing that convenience and justice for all parties demands that the litigation proceed elsewhere." *Halton v. Am. Int'l Group, Inc.*, No. 06-C-443, 2006 WL 3761331, at *2 (E.D. Wis. Dec. 18, 2006), citing *Chicago, Rock Island & Pac. R.R. Co. v. Igoe,* 220 F.2d 299, 302 (7th Cir. 1955) ("[T]he District Court should bear in mind that in filing an action the plaintiff is permitted to choose any proper forum and that the plaintiff's choice of forum should not be lightly set aside"). The party requesting transfer, therefore, "has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient" and that transferring will promote the interest of justice. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986).

## III.    Argument

GGP has not met its burden of establishing that the Northern District of Illinois is clearly more convenient for the parties, or that such a transfer would promote the interest of justice. The

Western District of Wisconsin is NMT's home forum, and this is where NMT chose to bring this lawsuit. GGP's attempt to paint NMT as a sham company established solely to "manipulate" venue is unfounded, and there is thus no reason to disturb NMT's choice. This is because the purported convenience to GGP of moving this lawsuit to the district in which its documents and employee witnesses are located falls far short of tipping the scales in favor of transfer, as there is no reason GGP cannot efficiently present its evidence in this Court. Furthermore, keeping this lawsuit in this District promotes the interests of justice, as it provides NMT with a much faster and efficient forum in which to resolve this patent infringement lawsuit, and avoids the potential for inconsistent decisions on issues such as claim construction and validity in multiple forums.

      A.      <u>NMT's Choice of Forum Should Not Be Disturbed</u>.

GGP spills much ink trying to convince the Court that NMT's choice of forum should be completely disregarded. GGP relies primarily on three decisions in making that argument: *In Re Zimmer Holdings Inc.*, 609 F.3d 1378 (Fed. Cir. 2010), *In re Microsoft Corp.*, 630 F.3d 1361 (Fed. Cir. 2011), and *Gemini IP Technology, LLC v. Hewlett-Packard Co.*, No. 07-C-205-S, 2007 WL 2050983 (W.D. Wis. July 16, 2007). Doc. No. 15 ("Def. Br.") at 6-7. GGP's reliance on those cases is, however, misplaced for several reasons.

First, the Federal Circuit's decisions in *Zimmer* and *Microsoft* are of limited import as the Federal Circuit was applying Fifth Circuit law to the issue of transfer under § 1404(a). The Fifth Circuit applies a substantially different test to this determination than courts in this Circuit. Specifically the Fifth Circuit applies the "public" and "private" factors for establishing *forum non conveniens* to motions for transfer.[2] *Zimmer*, 609 F.3d at 1380. Notably absent from the

---

[2] The private interest factors considered by the Fifth Circuit are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest

5

factors considered in this test is any deference to the plaintiff's choice of forum,[3] a factor of significant importance in this Circuit. *In re National Presto Industries, Inc.*, 347 F.3d 662, 663 (7th Cir. 2003). *See also Halton*, 2006 WL 3761331, at *2 (a plaintiff's choice of forum "is entitled to great weight and will not be disturbed except upon a clear-cut showing that convenience and justice for all parties demands that the litigation proceed elsewhere"); *Illumina, Inc. v. Affymetrix, Inc.*, No. 09-cv-277-bbc, 2009 WL 3062786, at * 2  (E.D. Wis. Sept. 21, 2009) ("even when plaintiff is not litigating in its home forum, his choice of forum should not be disturbed unless the transfer factors balance strongly favors defendant").

Second, the factual circumstances in the cases relied upon by GGP are markedly different from this case, as the actions of the plaintiffs clearly established that they were doing nothing more than trying to manipulate venue.  In *Zimmer*, for example, the plaintiff was a Michigan limited liability company, maintained a registered office in Michigan, and effectively had its primary place of business in Michigan.  609 F.3d at 1379-80.  In a transparent effort to establish venue in the Eastern District of Texas, the plaintiff established an office in Texas, transported copies of its patent prosecution files from Michigan to its Texas office space, and, based on those facts, claimed that the Eastern District of Texas was its home forum and principal place of business. *Id*. at 1381.

In rejecting that claim, the Federal Circuit noted that the plaintiff had failed to even register to do business in Texas.  *Id*. at 1379.  The Court further noted that the facts in *Zimmer* closely paralleled those of *In re Hoffman-LaRoche*, 587 F.3d 1333 (Fed. Cir. 2009), another

---

in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law. *Id*. at 1380-81.

[3] Under the Fifth Circuit test a plaintiff's choice of forum is not an independent factor within the § 1404(a) analysis, and it is not given deference.  Instead the Fifth Circuit merely requires the party requesting transfer to establish "good cause" for transfer.  *In re Volkswagon of Am., Inc.*, 545 F.3d 304, 314-315 (5th Cir. 2008) (en banc).

6

Federal Circuit case rejecting a plaintiff's attempt to manipulate venue where it, "in anticipation of the litigation, . . . converted into electronic format 75,000 pages of documents and transferred them from California to the offices of its litigation counsel in Texas and then asserted that the location of those documents was a factor that favored not transferring the case from the Eastern District of Texas." *Zimmer*, 609 F.3d at 1381. Unsurprisingly, the Federal Circuit concluded that the plaintiff had no legitimate connection with the Eastern District of Texas and ordered the case transferred because the other *forum non conveniens* factors weighed decidedly in favor of transfer. *Id.* at 1382.

A similar result followed in *Microsoft*, where the plaintiff, Allvoice Developments US, LLC, was a newly incorporated Texas entity that was nothing more than a shell for a related company, Allvoice Computing PLC. That related entity had already asserted the same patent in another forum against a different defendant. Specifically, Allvoice Computing PLC had previously asserted the patent-in-suit in the Southern District of Texas. *Allvoice Developments US, LLC, v. Microsoft Corp.*, No. 6:09-cv366, at 2 (E.D. Tex. April 8, 2010). Apparently unhappy with that forum, the decision was made to organize Allvoice Developments US, LLC, in the Eastern District of Texas. *In re Microsoft Corp.*, 630 F.3d at 1365. Again, it is hardly surprising that the Federal Circuit concluded that Allvoice Developments US, LLC was created solely for the purpose of manipulating venue. *Id*.

The final case relied on by GGP, *Gemini*, also misses the mark. While GGP quotes a particular statement by this Court regarding the "connection between plaintiff and Wisconsin," the Court was discussing that connection only in the context of the convenience of the parties factor, not whether the plaintiff's choice of forum deserved deference. *Gemini*, 2007 WL 2050983, at *1. Furthermore, both of the defendants in *Gemini* were Northern District of

7

California companies and numerous third party witnesses, including the inventors and prosecuting attorneys, also resided in the Northern District of California. *Id.* at *2. Because both defendants were from California and the "third party witnesses with relevant testimony concerning prior art would be available in California, but not in Wisconsin," the *Gemini* court found that transfer provided a "*significant* improvement in the convenience of parties and witnesses." *Id.* at *2-*3 (emphasis added). *Gemini* does not support GGP's attempt to have this Court disregard NMT's choice of forum, but rather shows the extent to which "[e]ach case must be judged on its own practicalities." *Id.* at *2. As discussed below, the Northern District of Illinois presents no improvement in the convenience to the potential third party witnesses and only a minimal improvement in the convenience to GGP and its employee witnesses.

Unlike the plaintiffs in cases discussed above, NMT is not a corporate shell established solely for the purpose of manipulating venue. Prior to forming NMT, Mr. Edwards and Mr. Smith did not have a presence in the United States through which business regarding the '130 patent could be conducted. In other words, there was not a preexisting entity in Michigan, or the Southern District of Texas, or any other forum where this lawsuit could have been brought, and no decision was made to form NMT in this District solely to avoid those other forums as the plaintiffs in *Zimmer* and *Microsoft* attempted to do.

Rather, NMT was organized in this country, and, more specifically, in this District for legitimate business reasons. *See* Smith Dec. at ¶¶ 5-10. Creating a United States company gave the inventors of the '130 patent a more efficient and marketable business through which to do business, and provided them with significant tax incentives not otherwise available to them. *Id.* at ¶¶ 5-6. Once the decision to organize in the United States was made, the inventors had to choose a state in which to do so. This District was selected as NMT's home, in part, for its

8

propensity for resolving patent infringement lawsuits in a timely and efficient manner. *Id*. at ¶¶ 7, 9.  While the Federal Circuit has condemned blatant attempts to manipulate venue, courts, including the Eastern District of Texas after the *In re Microsoft* decision, have recognized the legitimacy of such a business plan.  *See, e.g., Texas Data Co., L.L.C., v. Target Brands, Inc*., --- F.Supp.2d ---, 2011 WL 98283, at *13 (E.D. Tex. Jan. 12, 2011) ("But there is a difference between forming a company in an attempt to manipulate venue and forming a company in anticipation of litigation.  The former was condemned by the Federal Circuit in *Microsoft*.  The latter the Federal Circuit approved in [*Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1303-04 (Fed. Cir. 2009)].").

In fact, this Court has specifically recognized that a plaintiff's choice of this forum in such circumstances is properly entitled to significant weight, particularly in the context of patent infringement lawsuits:

> [W]hen considering a motion to transfer venue, a court often must look beyond the convenience of one party to determine whether transfer will promote the interests of justice.  These interests may be determinative in a particular case, even if the convenience of the parties and witnesses suggests a different result.  With this in mind, '[f]actors traditionally considered in an 'interest of justice' analysis relate to the efficient administration of the court system,' such as whether a transfer would help the litigants receive a speedy trial.
>
> Plaintiffs specifically chose the Western District because of its speed to trial, observing that it has become commonplace for patent holders with no connection to this district to file lawsuits here because this court is so fast and tends to keep such cases rather than foist them onto other courts. Swift resolution can be particularly important in patent cases because delay might frustrate a patent holder's rights and the value of its patent.

*E2Interactive, Inc. v. Blackhawk Network, Inc.*, No. 09-cv-629-slc, 2010 WL 3937911, at *4 (W.D. Wis. Oct. 6, 2010) (internal citations omitted).  NMT's choice of forum is thus properly deserving of deference, and GGP has failed to present a valid reason why that choice should be ignored.

To the contrary, if GGP's argument were accepted, NMT would almost never have any say in where it litigated its rights under the '130 patent, as every potential defendant's home forum would be more convenient for that defendant. NMT would only be able to maintain an action in this Court if the defendant happens to be headquartered in this District. That simply cannot be the proper result.

This slippery slope is more than just a mere possibility. NMT has brought two cases in this forum seeking to enforce the '130 patent, and both parties, GGP and Simon, who both do business in this District and nation wide, have sought transfer because NMT allegedly has no connections with this forum. Not only are those accusations false, as NMT is registered to do business in Wisconsin, has its only place of business in this District, maintains its company bank account in this District, has a registered agent in this District, and was organized in this forum for legitimate business reasons, but they render NMT's decision to establish itself here wholly inconsequential. It is simply not GGP's, or, for that matter, Simon's, rightful place to complain about that decision. NMT's choice of forum must receive the deference it is due.

B. **The Slight Increased Convenience to GGP And Its Employee Witnesses Is Entitled to Minimal Weight and Does Not Outweigh NMT's Choice of Forum.**

GGP also asserts that transfer is proper because its "corporate headquarters and principal place of business," and thus the "bulk of the relevant GGP witnesses and evidence," are in Chicago, Illinois. Def. Br. at 7-9. As this Court has repeatedly recognized, however, such alleged conveniences are entitled to minimal weight, particularly in patent lawsuits:

> In patent lawsuits, where experts and lawyers end up playing the starring roles, mention of "witnesses" and "records" in a given district carries minimal weight. Defendant does identify witnesses not subject to this court's subpoena power and summarizes their potential testimony. It argues that transfer is appropriate because all of its employee witnesses are located in California. However, traditional concerns related to the cost of obtaining the attendance of witnesses have been diminished by technological advancements. Further, the location of defendant's employee witnesses is not a heavily weighted factor because of the assumption

10

> that "witnesses within the control of the party calling them, such as employees, will appear voluntarily," that is, at least without subpoena. Accordingly, the convenience of employee witnesses is a neutral factor in this case.

*Illumina,* 2009 WL 3062786, at *3. *See also E2Interactive*, 2010 WL 3937911, at *3 ("[t]his court does not place great weight on the location of defendant's employee witnesses because it assumes that 'witnesses within the control of the party calling them, such as employees, will appear voluntarily,' or without subpoena. . . . Similarly, although the access to proof is a traditional convenience concern, recent technology has ameliorated, if not obviated, this concern") (*quoting Illumina*, 2009 WL 3062786, at *3); *Milwaukee Electric Tool Corp. v. Black & Decker (N.A.) Inc.*, 392 F. Supp. 2d 1062, 1064 (W.D. Wis. 2005) ("[T]echnological advancements have diminished traditional concerns related to ease of access to sources of proof and the cost of obtaining attendance of witnesses"); *Halton*, 2006 WL 3761331, at *2 ("Much of the proof in this case will be documentary, and documents are easily copied and transferred to either forum"). Other courts have also recognized this fact. *See also Sanofi-Aventis Deutschland Gmbh v. Genentech, Inc.*, 607 F. Supp. 2d 769, 777 (E.D. Tex. 2009) ("The notion that the physical location of some relevant documents should play a substantial role in the venue analysis is somewhat antiquated in the era of electronic storage and transmission. Because electronic information can be accessed conveniently in any number of locations, not simply the location where the information is stored, it does not follow that transfer to the location of the stored information is more convenient for anyone.") (internal quotation omitted).

GGP has not identified any valid reason why the information regarding its infringing Club Mobile App cannot be presented in this forum. To that end, GGP will, presumably, be producing any documents in this case to NMT's counsel in electronic format regardless of forum. *See* Doc. No. 27 at 4 ("The parties stipulate that documents may be produced by

providing electronic copies regardless of whether such documents were originally in tangible or electronic form"). The location of those documents, and GGP's employee witnesses, are thus entitled to minimal, if any, weight, and cannot override NMT's choice of forum.

    C.    <u>The Northern District of Illinois Is Not A More Convenient Forum For NMT</u>.

GGP also incorrectly asserts that "[t]he Northern District of Illinois is more convenient for [NMT]." Def. Br. at 7. GGP bases this assertion on the same flawed reasoning it used to argue that NMT's choice of forum should be ignored. *Id*. at 8. For the reasons stated above, that argument does not hold water. Because NMT chose to bring this suit in its home forum, "it is reasonable to assume that this choice is convenient." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981).

NMT is organized in Wisconsin, is registered to do business in Wisconsin, and has established bank accounts in Wisconsin. Smith Dec. at ¶ 10. Wisconsin is NMT's only place of business, and NMT has no presence in the Northern District of Illinois. *Id*. at ¶¶ 10-15. Further, NMT is engaged in another lawsuit enforcing the '130 patent in this Court. If this action were transferred to the Northern District of Illinois, NMT would be required to retain counsel in two separate forums, and face the potential of inconsistent rulings from different courts on key issues such as claim construction.[4] *See Encyclopedia Britannica, Inc. v. Magellan Navigation, Inc.*, 512 F. Supp. 2d 1169, 1177 (W.D. Wis. 2007) (trying cases involving the same patents in different courts presents a "risk that the same patents will be interpreted differently creating inconsistent claim construction rulings, piecemeal litigation and inconsistent judgments"). Clearly it would be significantly more convenient to NMT to maintain such related litigation within the same forum.

    D.    <u>The Northern District of Illinois Is Not More Convenient to Any</u>

---

[4] The same result would follow if Simon's motion to transfer was granted.

### Third Party Witnesses.

In assessing the convenience of a venue to potential witnesses, courts differentiate between party witnesses and third-party witnesses, assigning greater weight to the convenience of non-party witnesses. *Pitney Bowes, Inc. v. Data-Pac Mailing Sys. Corp.*, No. 07-CV-470-JCS, 2007 WL 5614076, at *3 (W.D. Wis. Dec. 4, 2007). Here, a transfer of venue to the Northern District of Illinois would be no more convenient to the third party witnesses identified by GGP than maintaining the action with this Court.

The two potential third party witnesses identified by GGP, John Croy of Point Inside Inc. and Ben Kotovic of L4 Mobile LLC, both reside in the state of Washington. Def. Br. at 3. GGP attempts to convince the Court that the Northern District of Illinois would be more convenient to these third party witnesses based solely on the purported availability of non-stop flights from Seattle to Chicago. *Id.* at 9. Notwithstanding that such witnesses may have to fly with one stop rather than non-stop, there is no indication that testifying in Madison would be any less convenient than Chicago. With either forum, these witnesses would have to fly half way across the country if they decide to voluntarily appear at trial.[5] Their attendance at trial could not be mandated, as both reside more than 100 miles from the relevant forums and thus neither court would have subpoena power over them. *See* Fed. R. Civ. P. 45(a). Accordingly, this factor is neutral in the analysis, and does not weigh in favor of transfer. *See Coffey*, 796 F.2d at 220 (where the party requesting a transfer only shows the requested district is only "as convenient as its sister . . . court, . . . that is insufficient to meet her burden under § 1404(a)").

E. **The Interest of Justice Favors Maintaining Venue in the Present District**

The interest of justice clearly weighs in favor of maintaining this case in this Court. "Factors traditionally considered in an 'interest of justice' analysis relate to the efficient

---

[5] Presumably, any depositions of these third party witnesses would occur in Washington, regardless of the venue.

13

administration of the court system," such as speed to trial, consolidation of related litigation, conservation of judicial resources, and avoidance of unnecessary legal expenses. *Coffey*, 796 F.2d at 221; *Pitney Bowes*, 2007 WL 5614076, at *4-*5.

This District affords NMT with a much faster resolution of this patent infringement lawsuit than the Northern District of Illinois. As this Court's decision in *Gemini* recognized, the importance of the swift resolution of patent cases is a relevant factor in the § 1404(a) analysis. *Gemini*, 2007 WL 2050983, at *3 (noting that where the patent holder's business strategy involved the licensing of its patents, rather than directly competing with the infringing party, "a less congested docket and an earlier trial date remain considerations in the interest of justice factor"). *See also Illumina,* 2009 WL 3062786, at *1 (denying the defendant's motion to transfer patent infringement lawsuit where the defendant "has not shown that the convenience of the parties and witnesses overcomes the interests of justice in affording plaintiff a speedy resolution in this patent infringement case").

GGP emphasizes that NMT is a "non-practicing entity" throughout its arguments and especially in attacking the interest of justice in seeking a speedy resolution to the current patent case. In *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 2011 WL 320952 (E.D. Va. Jan. 27, 2011), one of the primary cases upon which GGP relies in attacking NMT's interest in a speedy resolution, the court defined a "non-practicing entity" to mean an entity that "does not research and develop new technology but rather acquires patents, licenses the technology, and sues alleged infringers." *Id*. at *3. NMT is not such an entity. Instead, NMT is completely owned by the inventors of the '130 patent. Surely, where inventors come up with a novel idea and successfully navigate the perils of the patent office, they should be entitled to implement a business model around enforcing their hard-earned patent rights.

14

It is also in the interest of justice to keep both of NMT's related actions enforcing the '130 patent in the same forum. This will avoid the possible "risk that the same patent[] w[ould] be interpreted differently creating inconsistent claim construction rulings, piecemeal litigation and inconsistent judgments." *Encyclopedia Britannica*, 512 F. Supp. 2d at 1177.

GGP's effort to convince the Court that it should ignore this reality is unconvincing. GGP again relies on *Zimmer* in making this argument, but that case involved infringement allegations in separate forums directed to numerous patents covering widely differing inventions with virtually no overlap. *Zimmer*, 609 F.3d at 1382. Specifically, one of the cases involved two patents related to hip implants and four patents related to shoulder implants. *Id*. The other involved nine patents related to knee implants and a single patent related to shoulder implants. *Id*. The court found that because "the cases involve[d] different products with only a single overlapping patent . . . it [wa]s likely that these cases w[ould] result in significantly different discovery, evidence, proceedings, and trial." *Id*. *Zimmer* thus provides no support to GGP's argument, and the interests of justice, like NMT's choice of forum, weigh decidedly in favor of rejecting GGP's request for transfer.

**IV.     Conclusion.**

GGP has failed to make the necessary clear-cut showing that convenience and justice for all parties demands NMT's choice of forum be ignored and that this case should be transferred to the Northern District of Illinois. Granting GGP's motion would thus set a dangerous precedent– that NMT's choice of forum is merely illusory, and thus NMT must always travel to a defendant's home forum to enforce the '130 patent and face the possibility of inconsistent claim construction rulings and judgments. GGP's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) must be denied.

Dated this 21st day of July, 2011	NORTHMOBILETECH LLC


By: ___s/ Travis James West_____
Travis James West
State Bar No. 1052340
**SOLHEIM BILLING & GRIMMER, S.C.**
One South Pinckney Street, Suite 301
P.O. Box 1644
Madison, WI 53701-1644
(608) 561-1779 (phone)
(608) 282-1218 (facsimile)
twest@sbglaw.com

Keith A. Rabenberg (*pro hoc vice*)
Michael J. Hartley (*pro hac vice*)
SENNIGER POWERS LLP
100 North Broadway, 17th Floor
St. Louis, Missouri 63102
(314) 345-7000 (phone)
(314) 345-7600 (facsimile)
krabenberg@senniger.com
mhartley@senniger.com