# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| NORTHMOBILETECH LLC, | ) |
| Plaintiff, | ) Case No. 11-cv-00291 |
| vs. | ) JURY TRIAL DEMANDED |
| GENERAL GROWTH PROPERTIES, INC., | ) Hon. Barbara B. Crabb |
| Defendant. | ) |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(a)**

**Table of Contents**

                                           **Page**

I.   INTRODUCTION..........................................................................................................1

II.   **THE WESTERN DISTRICT OF WISCONSIN IS NOT NMT'S HOME FORUM FOR THE PURPOSES OF A VENUE ANALYSIS AND ITS CHOICE IN FORUM SHOULD RECEIVE NO DEFERENCE**...................................1

III.   **THE CONVENIENCE OF THE PARTIES AND WITNESSES FAVORS THE NORTHERN DISTRICT OF ILLINOIS**...................................................................5

IV.   **THE INTERESTS OF JUSTICE REQUIRE TRANSFER TO THE NORTHERN DISTRICT OF ILLINOIS** ........................................................................6

V.   CONCLUSION ...........................................................................................................8

i

## Table of Authorities

**Cases**

*Allvoice Developments US, LLC v. Microsoft Corp.*,
   No. 6:09-CV-366, 2010 U.S. Dist. LEXIS 115997 (Apr. 8, 2010) .............................................. 3

*E2Interactive, Inc. v. Blackhawk Network, Inc.*,
   No. 09-cv-629-slc, 2010 WL 3937911 (W.D. Wis. Oct. 6, 2010) .............................................. 6

*Encyclopedia Britannica, Inc. v. Magellan Navigation, Inc.*,
   512 F. Supp. 2d 1169 (W.D. Wis. 2007) ...................................................................................... 8

*Forest Group, Inc. v. Bon Tool Co.*,
   590 F.3d 1295 (Fed. Cir. 2009) ................................................................................................. 4, 5

*Gemini IP Tec., LLC v. Hewlett Packard Co.*,
   No. 07-c-205-s, 2007 WL 2050983 (W.D. Wis. Jul. 16, 2007) .......................................... 2, 3, 4

*Guardian Media Tech., Ltd v. Mustek Sys., Inc.*,
   440 F.Supp.2d 937 (W.D. Wis. 2006) .......................................................................................... 7

*Hertz Corp. v. Friend*,
   130 S.Ct. 1181 (2010) ................................................................................................................... 3

*In re Microsoft Corp.*,
   630 F.3d 1361 (Fed. Cir. 2011) ................................................................................................. 2, 3

*In re Volkswagen of America, Inc.*
   545 F.3d 304 (5th Cir. 2008) ........................................................................................................ 4

*In re Zimmer Holdings, Inc.*,
   609 F.3d 1378 (Fed. Cir. 2010) ................................................................................................. 2, 3

*Allvoice Computing PLC v. Scansoft, Inc.*,
   No. H-02-4471, 2002 WL 34416118 (S.D. Tex. Dec. 4, 2002) .................................................. 3

*Pragmatus AV LLC v. Facebook, Inc.*,
   769 F. Supp. 2d 991 (E.D. Va. 2011) ....................................................................................... 8, 9

*Texas Data Co. L.L.C. v. Target Brands, Inc.*,
   --- F.Supp.2d ----, 2011 WL 98283 (E.D. Tex. Jan. 12, 2011) ............................................... 4, 5

*Uniroyal Engineered Prods., LLC v. Omnova Solutions Inc.*,
   No. 08-cv-586-slc, 2009 WL 736700 (W.D. Wis. Mar. 19, 2009) ............................................. 6

**Statutes**

35 U.S.C. § 281 ................................................................................................................................ 6

35 U.S.C. § 292................................................................................................................................ 6

**I.      INTRODUCTION**

The Western District of Wisconsin is not convenient for either party.  Faced with a mass of facts and law against it, NMT must rely on its choice of forum alone, arguing that this choice should suffice to maintain this case in this District.  This it must do because it cannot reasonably dispute that the balance of conveniences and the interests of justice favor the Northern District of Illinois.  NMT and this litigation have no genuine connection to the Western District of Wisconsin.  NMT identifies no employees within the District, nor does it describe any relevant business activities that take place at its "office" in Middleton, Wisconsin.  Indeed, NMT admits that its sole reason for organizing in this District was to establish venue for the purpose of pursuing patent litigation.  The Western District of Wisconsin cannot be considered NMT's home forum, and its choice to litigate here should not be entitled to deference.  For these reasons, set forth in detail below, GGP's motion to transfer should be granted.

**II.     THE WESTERN DISTRICT OF WISCONSIN IS NOT NMT'S HOME FORUM FOR THE PURPOSES OF A VENUE ANALYSIS AND ITS CHOICE IN FORUM SHOULD RECEIVE NO DEFERENCE**

In contrast to NMT's argument that it organized in Wisconsin for "legitimate business reasons," NMT offers no relevant facts to show that its Wisconsin location exists for any purpose other than to manipulate venue.  NMT Br. at 8-9.  Indeed, NMT admits that it organized in Wisconsin in order to establish venue for patent litigation lawsuits.  NMT Br. at 8-9; *see also* Ex. 1 to NMT Br., Declaration of Ian Gregory Smith ("Smith Decl.") at ¶ 9.  NMT's alleged "business reasons" include the alleged facts that NMT is registered to do business in Wisconsin and has a registered agent and bank accounts in Wisconsin. NMT Br. at 3, 10, 12; Ex. 1 to NMT Br., Smith Decl. at ¶ 10.  But none of that has any relevance to this case.  NMT is no different than the many other non-practicing entities whose attempts to create a "home forum" for purposes of a venue analysis have been repeatedly rejected.  *Gemini IP Tec., LLC v. Hewlett*

*Packard Co.*, No. 07-c-205-s, 2007 WL 2050983 at *1-2 (W.D. Wis. Jul. 16, 2007); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010); *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011).

NMT's presence in this district is "recent, ephemeral, and an artifact of litigation" and cannot make the district its "home forum" for the purposes of venue. *Zimmer*, 609 F.3d at 1381. NMT concedes that its purported "business reasons" for having a "principal place of business" in Wisconsin apply equally to any other location in the United States. NMT Br. at 8; Ex. 1 to NMT Br., Smith Decl. at ¶ 6. The alleged increased willingness of potential business partners to deal with a United States company and tax benefits would be the same to NMT regardless of where in the United States NMT settled. NMT provides no evidence that it has any employees in its Wisconsin office, that it actually conducts any of its "business" out of that office, or that the office is anything more than a mere mail drop-box. NMT Br. at 3, 8-9, 12. Indeed, there is no evidence that NMT's principals have ever even been to Wisconsin. (*See, e.g.*, Ex. 1 to NMT Br., Smith Decl.).

NMT's attempts to distinguish the *Microsoft*, *Zimmer*, and *Gemini* cases are unconvincing and, in some cases, rely on distortions of the facts. First, NMT states that the *Microsoft* plaintiff had a pre-existing entity in the United States, differentiating it from NMT. (NMT Br. at 8). The *Microsoft* plaintiff, however, had no such entity. *See Allvoice Developments US, LLC v. Microsoft Corp.*, No. 6:09-CV-366, 2010 U.S. Dist. LEXIS 115997 at *3-4 (Apr. 8, 2010); *see also Allvoice Computing PLC v. Scansoft, Inc.*, Plaintiff's First Amended Original Complaint, No. H-02-4471, 2002 WL 34416118 at ¶ 1 (S.D. Tex. Dec. 4, 2002). Instead, the *Microsoft* plaintiff was strikingly similar to NMT, as the business had recently organized in the forum but was "operated from [a foreign country] by the patent's co-inventor and company's managing

2

member" and "it [was] not disputed that the entity does not employ individuals in those offices or anywhere in the United States." *Microsoft*, 630 F.3d at 1362.

Second, NMT's discussion of the *Zimmer* plaintiff's pre-litigation actions likewise misses the mark. NMT Br. at 6-7. The salient similarity is that NMT's actions, like the *Zimmer* plaintiff, were in anticipation of litigation and for the sole purpose of manipulating venue. *Zimmer*, 609 F.3d at 1381 (*citing Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1194 (2010) which "urg[ed] courts to ensure that the purposes of venue laws are not frustrated by a party's attempts at manipulation").

Third, NMT similarly cannot distinguish the *Gemini* case. NMT Br. at 7-8. Although the court in Gemini did discuss the plaintiff's lack of connection to the district with regard to the "convenience of the parties" factor, the *Gemini* court also did not address the plaintiff's choice as a separate factor in its analysis. *See Gemini*, 2007 WL 2050983 at *1. Indeed, due to the plaintiff's lack of connection with Wisconsin, there is no indication that the court gave the plaintiff's choice any weight. *Id.*

NMT's remaining arguments are similarly unavailing. Contrary to NMT's assertion, the Fifth Circuit does take the plaintiff's choice of forum into account as part of its analysis in determining whether the defendant has met its burden to establish "good cause" for a transfer. *In re Volkswagen of America, Inc.* 545 F.3d 304, 314 n.10 (5th Cir. 2008) ("We have noted that a plaintiff's choice in venue is to be treated as a burden of proof question. . . . Although a plaintiff's choice of venue is not a distinct factor in the venue transfer analysis, ***it is nonetheless taken into account*** as it places a significant burden on the movant to show good cause for the transfer.") (emphasis added) (citations and internal quotations omitted).

NMT misinterprets the law when it cites *Texas Data Co. L.L.C. v. Target Brands, Inc.*, ---

3

F.Supp.2d ----, 2011 WL 98283 (E.D. Tex. Jan. 12, 2011) and *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295 (Fed. Cir. 2009) for the proposition that courts have "recognized the legitimacy" of NMT's "business plan." NMT Br. at 9. First, these cases differ from the present patent infringement case because they involved companies suing to enforce the false marking statute. The false marking statute explicitly permits members of the public, including non-patent owners, to sue to enforce the prohibition against false marking. *Forest Group*, 590 F.3d 1303-04; *compare* 35 U.S.C. § 281 *to* 35 U.S.C. § 292. This explicit *qui tam* provision in the false marking statute, absent from the patent infringement statute, was central to the courts' venue analysis. *Id.*; *Texas Data*, 2011 WL 98283 at \*5-6. Second, the *Texas Data* court explicitly differentiated between the plaintiff in *Texas Data* and the plaintiffs in *Microsoft* and *Zimmer*:

> The president of the company for Plaintiff Texas Data, Thomas Coverstone, has lived within the Eastern District of Texas for over a year. Virtually all of Texas Data's activities, including its employees, are in the Eastern District of Texas. Thus, this case is in contrast to *Zimmer* where nearly all of the activities and employees were in Michigan and *Microsoft* where the principal of the plaintiff was in the United Kingdom. Although Texas Data was incorporated three days before Texas Data filed its first false marking suit, Texas Data was not formed to manipulate venue as in *Zimmer* and *Microsoft*. Texas Data's president and employee have lived in the Eastern District of Texas for over a year.

*Id.* at \*13 (internal citations omitted). As demonstrated above, NMT's situation is indistinguishable from the *Zimmer* and *Microsoft* plaintiffs. Contrary to NMT's assertion, the *Forest Group* and *Texas Data* courts did not approve NMT's "business plan" of organizing a shell corporation in a district where its principals are not located, where it conducts no actual "business," and when the sole purpose of organizing in the district was to establish venue for patent litigation. Indeed, NMT is correct that "'there is a difference between forming a company in an attempt to manipulate venue and forming a company in anticipation of litigation.'" NMT Br. at 9 (quoting *Texas Data*, 2011 WL 98283 at \*13). But NMT is incorrect that the law or the facts support placing it into the latter category.

4

Finally, NMT's reliance on *E2Interactive, Inc. v. Blackhawk Network, Inc.*, No. 09-cv-629-slc, 2010 WL 3937911 (W.D. Wis. Oct. 6, 2010) is misplaced. Unlike the plaintiff in *E2Interactive*, NMT does not produce any product that competes with GGP's The Club Mobile Application. *E2Interactive*, 2010 WL 3937911 at *1; NMT Br. at 2-3. NMT cannot argue that its choice deserves special weight. *E2 Interactive*, 2010 WL 3937911 at *4 ("Swift resolution *can be* particularly important because delay might frustrate a patent holder's rights and the value of its patent. *This is all the more true in a case between direct competitors in a dynamic market* where the dispute involves a recent patent.") (emphasis added). In sum, NMT's arguments find no support in fact or law and NMT's choice should receive no deference in the analysis.

### III. THE CONVENIENCE OF THE PARTIES AND WITNESSES FAVORS THE NORTHERN DISTRICT OF ILLINOIS

There can be no serious dispute that the Northern District of Illinois is more convenient for the parties and the witnesses. The Northern District of Illinois is more convenient for GGP, where its corporate headquarters is located and all of its litigation-related witnesses and documents reside. (Ex. A to GGP Op. Br., Declaration of Jeffry Cloud at ¶¶ 10-11, 14-15, 18-19, 23-24). And despite NMT's arguments to the contrary, this consideration *is* afforded weight in the analysis. *See, e.g.*, *Uniroyal Engineered Prods., LLC v. Omnova Solutions Inc.*, No. 08-cv-586-slc, 2009 WL 736700 at *4 (W.D. Wis. Mar. 19, 2009). The Northern District of Illinois is not merely "slightly" more convenient for GGP. NMT Br. at 11-12. The walking distance that GGP's party employees will have to travel to court in Chicago represents a significant improvement in convenience over the nearly three-hour drive or flight they would have to make to attend court in Madison. (Ex. Q, Map of Distances to Courthouses.)

Moreover, NMT identifies no party witnesses from the Western District of Wisconsin,

5

nor does it identify any evidence located in the district that is relevant to this lawsuit. NMT Br. at 12. Instead, NMT states that the court should "assume" that this District is more convenient because it is NMT's home forum. (*Id.*). As discussed above, NMT's "home forum" argument is flawed. *See supra* Section II. NMT likewise fails to identify any third party witnesses for whom the Western District of Wisconsin would be more convenient and does not dispute that it is more convenient for the third party witnesses that GGP identified to travel to Chicago. NMT Br. at 13.

Thus, NMT has failed to show that the Western District of Wisconsin is more convenient and has failed to rebut the facts that show that the Northern District of Illinois significantly improves the parties' and witness' convenience. The balance of convenience favors transfer. *See, e.g.*, *Guardian Media Tech., Ltd v. Mustek Sys., Inc.*, 440 F.Supp.2d 937, 939 (W.D. Wis. 2006) (finding transferring venue "significantly more convenient for the parties as a whole because it is substantially more convenient for each of the four defendants and no less convenient for the plaintiff").

## IV. THE INTERESTS OF JUSTICE REQUIRE TRANSFER TO THE NORTHERN DISTRICT OF ILLINOIS

NMT argues that its interest in a quick resolution of this lawsuit and its pending litigation against Simon weigh against transfer. Neither of these arguments, however, applies to the particular facts and circumstances present in this case. To the contrary, the interests of justice favor a transfer to the Northern District of Illinois.

First, NMT cites the median time-from-filing-to-trial statistics to support its argument that the Western District of Wisconsin affords it a much quicker resolution of this matter. But in reality, the differences are not as large as NMT would suggest. The court recently issued its scheduling order and set trial for the end of November, 2012, resulting in there being 20 months from the time of filing this case to the time of trial. (Ex. R, Scheduling Orders). And further, the

6

difference in median time from filing to disposition is less than one month.  NMT Br. at 3.

Second, as set forth by GGP in its Opening Brief, NMT's status as a non-practicing entity diminishes the weight afforded to its desire for what in reality would be a slightly shorter time to trial.  *See, e.g.*, *Encyclopedia Britannica, Inc. v. Magellan Navigation, Inc.*, 512 F. Supp. 2d 1169, 1176 (W.D. Wis. 2007).  NMT offers no evidence that it has ever or will ever practice the '130 patent.  Instead, NMT makes explicit that its business plan involves "licensing" and "enforcing its rights in" the '130 patent.  NMT Br. at 2-3, 14.

NMT distorts recent case law when it attempts to suggest that it is a "practicing" entity. NMT Br. at 14 (citing *Pragmatus AV LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 995 (E.D. Va. 2011) (characterizing plaintiff as a "'non-practicing entity,' meaning that it does not research and develop new technology but rather acquires patents, licenses the technology, and sues alleged infringers.  *[Plaintiff's] main line of business is enforcing its intellectually property rights, and a large part of that task involves threatening to file lawsuits.*") (emphasizing portion omitted from NMT Brief)).  By its own admission, NMT has "implement[ed] a business model around enforcing [the inventors'] hard-earned patent rights."  NMT Br. at 14.  But beyond that, NMT puts forth no evidence that it presently conducts research or develops new technologies; indeed, its patents were filed in 2005 and 2006, and the most recent, and only, non-litigation related conduct by its principals appears to be a "short pilot" undertaken over five years ago.  (Ex. 1 to NMT Br., Smith Decl. at ¶ 4).  As such, NMT's interest in a speedy time to trial should be entitled to little, if any, weight, and the interests of justice are better served by discouraging NMT's forum shopping.  *Pragmatus*, 769 F.Supp.2d at 997.

NMT also fails to show that transfer to the Northern District of Illinois will diminish judicial efficiencies.  Although NMT notes that it has asserted the '130 patent against Simon,

7

who also has moved to transfer its case to a more convenient forum, NMT presents no facts to show that the two cases have significant overlap. NMT Br. 15. NMT also does not suggest that the Northern District of Illinois will be unable to consider another Judge's claim construction and invalidity analysis, to the extent they exist and impact its analysis, in the same way that this Court would consider a prior analysis involving a different defendant and potentially different issues and arguments. (Ex. S, NMT v. Simon Docket). Indeed, NMT's argument of "judicial economies" would undermine the interests of justice by setting the precedent that plaintiffs can hold on to an improper forum merely by suing two defendants—where the forum is inconvenient to both—on the same patent.

### V. CONCLUSION

For the foregoing reasons, GGP respectfully requests that this Court grant its motion to transfer venue to the Northern District of Illinois, a more convenient venue for both parties.

Dated: August 1, 2011

Respectfully submitted,

s/ Mark A. Pals, P.C.

Mark A. Pals, P.C. (IL 6201751)
Eric D. Hayes (*pro hac vice*)
Helena D. Kiepura (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Fascimile: (312) 862-2200
mark.pals@kirkland.com
eric.hayes@kirkland.com
helena.kiepura@kirkland.com
*Attorneys for Defendant General Growth Properties, Inc.*

8